IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Robert E. Blackburn, Judge

Civil Case No. 06-cv-00848-REB-CBS

CONVERDYN,

    Plaintiff,

v.

JAMES NEAL BLUE,
HEATHGATE RESOURCES PTY, LTD,
GENERAL ATOMIC TECHNOLOGIES CORPORATION, and
NUCLEAR FUELS CORPORATION,

    Defendants.

## ORDER CONCERNING DEFENDANTS' MOTIONS TO EXCLUDE OPINION TESTIMONY

**Blackburn, J.**

This matter is before me on the following motions: 1) **Motion To Exclude Opinions and Testimony of Plaintiff's Purported Expert, Michael Manion** [#217]; 2) **Defendants' Motion To Exclude the Report and Testimony of Plaintiff's Purported Expert, Dr. R. Gene Clark** [#219]; and 3) **Defendants' Motion To Exclude Certain Testimony and Opinions of Plaintiff's Purported Expert, Joseph T. Anastasi**, all filed November 15, 2007. The plaintiff filed a response to each motion, and the defendants filed a reply to each response. The motions are denied.

### I. BACKGROUND

This case concerns a contract for the purchase and sale of uranium ore, and defendant Heathgate Resources Pty, Ltd's alleged breach of certain delivery obligations under the contract. The plaintiff, ConverDyn, asserts a variety of claims based on the

events surrounding the alleged breach by Heathgate. The opinion testimony at issue in the three motions concerns certain relatively focused topics related to ConverDyn's claims against the defendants. Those topics and the challenged testimony are outlined below.

## II. FED. R. EVID. 702

Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The standards outlined in Rule 702 implicate, of course, the standards for admission of opinion testimony stated in the so-called **Daubert** trilogy. **Daubert v. Merrell Dow Pharm.**, 509 U.S. 579 (1993); **Gen. Elec. Co. v. Joiner**, 522 U.S. 136 (1997); **Kumho Tire Co., Ltd. v. Carmichael**, 526 U.S. 137 (1999). The court's application of the standards of Rule 702 and the related cases is "a flexible and commonsense undertaking in which the trial judge is granted broad latitude in deciding both how to determine reliability as well as in the ultimate decision of whether the testimony is reliable." **Smith v. Ingersoll-Rand Co.**, 214 F.3d 1235, 1243 (10th Cir. 2000) (internal quotation and citations omitted).

Rule 702 requires that opinion testimony be the product of reliable principles and methods, and that an opinion witness has applied those principles and methods reliably to the facts of the case. The reliability analysis applies to all aspects of an expert's testimony, including the facts underlying the opinion, the methodology, and the link between the facts and the conclusion drawn. **Heller v. Shaw Indus.**, 167 F.3d 146, 155

2

(3d Cir.1999). Consequently, the court must make a practical, flexible analysis of the reliability of the testimony, considering relevant factors and the circumstances of the case. *See, e.g., Kumho Tire*, 526 U.S. at 149-52; *Heller*, 167 F.3d at 155.

## III. ANALYSIS

### A. Michael Mainion

Michael Manion's proposed opinion testimony concerns what he says is the customary provision in uranium supply contracts concerning the damages available to a buyer if a seller fails to deliver uranium due under the terms of a uranium supply contract. Manion opines that it is the general custom and practice in the nuclear fuel industry for a buyer to waive its right to consequential damages in the event of such a breach, and to preserve the buyer's right to so-called cover damages. In addition, ConverDyn seeks to have Manion present opinion testimony concerning a buyer's usual practice in obtaining replacement uranium if a seller fails to deliver uranium due under the terms of a uranium supply contract.

The defendants argue first that Manion's testimony should be excluded under the parol evidence rule. Generally, extrinsic or parol evidence is not admissible to create an ambiguity in a written agreement that is complete, clear, and unambiguous on its face. At least in part, Manion's testimony is intended to clarify the meaning of Article Nine of the ConverDyn/Heathgate contract, the contract at issue in this case. Article Nine includes a damages limitation provision. I have reviewed Article Nine and the issues surrounding it in the context of motions for summary judgment in this case. Based on the current record, I conclude that the key term, "Purchase Price," in Article Nine is undefined. Because it is undefined, but susceptible to one than one reasonable definition, it is, by definition,

3

ambiguous. Therefore, I reject the defendants' contention that parol evidence concerning this key term is not admissible.

The defendants argue also that Manion is not qualified to present opinion testimony concerning the customary damages provision in uranium supply contracts, and the custom and practice in the industry concerning cover purchases in the spot market, including the timing of such purchases. From 1979 to December, 2005, Mannion worked in the nuclear fuel division of PSEG, a nuclear utility company that regularly purchased uranium and uranium hexafluoride from suppliers like Heathgate and ConverDyn. Eventually, Mannion was the head of the nuclear fuel division of PSEG. During his tenure as the head of the nuclear fuel division, Mannion had responsibility for negotiating and overseeing the terms and conditions of PSEG's contracts with all of its vendors, including contracts for the purchase of uranium and uranium hexafluoride. Mannion personally negotiated approximately forty to fifty contracts for the purchase of uranium, which contracts included consequential damages and limitation of liability provisions similar to those set forth in Article 9 of the ConverDyn/Heathgate contract.

I conclude that Manion's knowledge, skill, experience, training and education qualify him to render the opinions summarized above. To the extent that there may be some gaps between the precise issues addressed by Manion and his personal expertise or his personal experience, any such gaps go to the weight to be given to his opinions, and not to their admissibility. Manion's knowledge and experience are sufficient to provide the relevant trier of fact with helpful information on the issues that Manion proposes to address. I find that under Rule 702 Manion is qualified to render the opinions stated in his report which are challenged in the defendants' motion.

## B. Dr. R. Gene Clark

Dr. R. Gene Clark's proposed opinion testimony concerns the terms under which a domestic party, such as ConverDyn, could have entered into a contract to purchase uranium in and after February, 2006. The contract addressed by Dr. Clark concerns a purchase of up to 589,000 pounds of uranium with future deliveries in the periods spanning the years 2006 to 2009. Dr. Clark opines that a purchaser seeking such a contract would have had to agree to a price determined as 100 percent of the prevailing spot market price at the time of delivery with a price floor of about 35 dollars per pound.

Dr. Clark has rendered an opinion about the price ConverDyn likely would have had to pay for uranium if it had sought to replace the uranium due ConverDyn from Heathgate in February, 2006. In general, Dr. Clark concludes that ConverDyn probably would have had to pay the spot market price for uranium. The defendants argue that Dr. Clark's opinion must be excluded because it is unreliable.

First, the defendants note that Dr. Clark stated in his deposition that there was essentially a 60 percent chance that a contract sought by ConverDyn under the relevant circumstances would have required ConverDyn to pay the spot market price for uranium. *Motion to exclude* [#219], filed November 15, 2007, pp. 7-8. The defendants argue that this level of certainty makes Dr. Clark's opinion so equivocal that it is meaningless. I disagree. The fact that Dr. Clark cannot be more certain does not render his opinion inadmissible. In this context, a 60 percent level of certainty does not render Dr. Clark's opinion so equivocal that it is meaningless. Rather, this level of certainty goes to the weight to be accorded his opinion by the finder of fact. "There is no requirement that an expert state an opinion to any particular degree of certainty." ***Bitler v. A.O. Smith Corp.***,

5

400 F.3d 1227, 1236 n. 2 (10th Cir.2004), *cert.. denied sub nom. White-Rogers v. Bitler*, 546 U.S. 926 (2005).

Second, the defendants argue that Dr. Clark's opinion is based on data that actually undermines his opinion. Dr. Clark relies on a database of information about uranium sale contracts, and the defendants point to contracts that did not require the purchaser to pay 100 percent of the prevailing spot market price. The fact that some data may support an opinion different than that of Dr. Clark is not fatal *per se* to the admissibility of Dr. Clark's opinion. It is a rare circumstance when all available data supports one particular conclusion. On this record, the existence of data that my be contrary to Dr. Clark's opinion is a circumstance that goes to the weight to be accorded his opinion by the fact finder, and not to the admissibility of his opinion.

Third, and in a similar vein, the defendants argue that Dr. Clark failed to consider contracts executed prior to February, 2006, in developing his opinion. however, the plaintiff cites evidence in the record indicating that Dr. Clark did consider contracts executed prior to February, 2006. Further, to the extent Dr. Clark excluded such data, that fact goes to the weight to be ascribed to his opinions, and not to their admissibility. The defendants' criticisms of Dr. Clark's data do not indicate that Dr. Clark had so little factual information that he could not form reasonably reliable opinions. Under these circumstances, vigorous cross examination and presentation of contrary evidence are the appropriate means for challenging the factual basis of Dr. Clark's opinions.

Finally, I note that the defendants argue in a footnote that Dr. Clark's testimony is irrelevant because it measures ConverDyn's potential damages through a calculation that is not permitted under the terms of the ConverDyn/Heathgate contract. This is a

reference to the damages limitation provision of Article Nine of the contract. As noted above, I conclude that the damages limitation provision of Article Nine is ambiguous. If ConverDyn can establish that its interpretation of this provision is correct, then Dr. Clark's opinions are relevant to the application of this provision. Therefore, I reject the defendants' claim that Dr. Clark's opinion testimony is irrelevant.

### C. Joseph T. Anastasi

Joseph T. Anastasi is presented as an expert in forensic accounting and financial analysis. Anastasi's proposed opinion testimony revolves around two basic propositions. First, Anastasi opines that Heathgate made certain inaccurate statements about its financial condition, which statements are contradicted by various internal Heathgate records that address Heathgate's financial condition. The inaccurate statements allegedly were made to Heathgate customers and to other third parties. Anastasi opines also that the representations made to Heathgate's customers and others are materially different than the statements made in internal Heathgate records. Second, Anastasi opines that ConverDyn did not have the financial ability to purchase replacement uranium on the spot market at the times when Heathgate failed to deliver uranium to ConverDyn. The defendants challenge Anastasi's opinion testimony on several grounds.

First, the defendants argue that Anastasi has done nothing more than examine statements about Heathgate's finances made in one set of documents, and then compare those statements to statements made elsewhere on the same topic. Based on this comparison, the defendants argue, Anastasi has done nothing more than determine whether certain statements are the same as or different from certain other statements. The defendants argue that a jury can conduct this analysis without the assistance of an

7

expert. I disagree. Anastasi's analysis involves the nuances of financial statements and corporate accounting, topics that are generally beyond the ken of lay jurors. Anastasi's expertise will assist the trier of fact in resolving genuine issues of material fact.

Second, the defendants argue that Anastasi seeks to opine about the defendants' intent and motivation when they took or failed to take certain actions. The plaintiff says Anastasi will do nothing more than say that Heathgate's internal documents reflect certain beliefs by Heathgate about its financial condition. To this extent, his testimony is admissible. If Anastasi seeks to testify improperly about the defendants' beliefs and motivations, then the admissibility, *vel non*, of such testimony can be resolved quickly at trial.

Third, the defendants argue that Anastasi is not qualified to render certain opinions contained in his report. The defendants assert that Anastasi is not qualified to opine that Heathgate's reporting to the Australian government concerning its uranium exports was not in compliance with the requirements of the Australian government. The plaintiff claims Anastasi will testify only that Heathgate made misrepresentations to the Australian government concerning its uranium exports. Anastasi's opinion that Heathgate made inaccurate statements in its reporting to the Australian government are based on a comparison of various Heathgate documents with the content of Heathgate's reports to the Australian government. Anastasi, a forensic accountant, is qualified to conduct such an analysis and to opine about the accuracy of Heathgate's reports to the Australian government, as compared to other statements.

The defendants argue also that Anastasi is not qualified to opine about the amount of Heathgate's uranium reserves, its production capacity, the value of a property owned by

8

Quasar Resources Pty. Ltd, and the market effects of Heathgate's withholding of uranium production. The defendants argue that these opinions go well beyond forensic accounting. The plaintiff indicates that Anastasi will testify about these topics "only in the context of explaining how that underlying information impacts Heathgate's accounting and financial reporting," and how Heathgate made material misrepresentations about its financial condition by failing to report this information. *Response* [#263], filed December 5, 2007, p. 14. Anastasi's expertise in accounting is well-suited to these purposes, and I conclude that he is qualified to offer such opinions.

The defendants assert also that Anastasi is not qualified to state an opinion concerning the lack of measures taken by Heathgate to mitigate the adverse impact of foreign exchange rate movements. As stated in Anastasi's report, his opinions related to the impact of foreign exchange rate movements is, as with most of his other opinions, stated in terms of Heathgate's accounting and the accuracy of representations Heathgate made to others. In this context, Aanastasi is qualified to offer opinion testimony on this topic.

Fourth, the defendants argue that Anastasi did not apply a reliable methodology in developing some of his opinions and that these opinions must be excluded as unreliable. Having reviewed each of the challenged opinions, and the data and analysis underlying each of these opinions, I conclude that each such opinion is based on a reasonably reliable methodology within Anastasi's expertise of forensic accounting.

## IV. CONCLUSION & ORDER

I conclude ultimately that the opinion evidence challenged by the defendants is admissible under Fed. R. Evid. 702. Any flaws in the qualifications of, data used by, or

9

methodology applied by these witnesses do not render the challenged opinions inadmissible. Further, I conclude that the challenged opinion testimony will be helpful to the trier of fact in this case. Finally, on the current record, I conclude that the challenged evidence is relevant and is not inadmissible under the parol evidence rule.

**THEREFORE IT IS ORDERED** as follows:

1. That the **Motion To Exclude Opinions and Testimony of Plaintiff's Purported Expert, Michael Manion** [#217], filed November 15, 2007, is **DENIED**;

2. That the **Defendants' Motion To Exclude the Report and Testimony of Plaintiff's Purported Expert, Dr. R. Gene Clark** [#219], filed November 15, 2007, is **DENIED**; and

3. That the **Defendants' Motion To Exclude Certain Testimony and Opinions of Plaintiff's Purported Expert, Joseph T. Anastasi**, filed November 15, 2007, is **DENIED**.

Dated January 8, 2008, at Denver, Colorado.

                                **BY THE COURT:**

                                **s/ Robert E. Blackburn**
                                **Robert E. Blackburn**
                                **United States District Judge**